IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,     :
                           :
        Plaintiff,        :
                           :       CIVIL ACTION
v.                           :
                           :       NO. 1:04-CR-329-TCB-ECS
CHARLES E. EDWARDS,       :
                           :
        Defendant.        :
                           :

**REPORT & RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**I.**
**Background**

On September 29, 2005, Defendant Charles Edwards was convicted of various charges related to the operations of ETS Payphones, Inc. ("ETS"), including wire fraud, money laundering, and conspiracy to commit money laundering. [Doc. 110]. The indictment included a forfeiture provision, [Doc. 18], pursuant to which money and property that the government contended was subject to forfeiture was seized and later ordered forfeited to the United States under 18 U.S.C. § 982(a)(1), the provision governing criminal forfeiture. [Doc. 127]. This matter is now before the Court on the motion for summary judgment, [Doc. 189], filed by the United States Government ("Respondent") in response to petitions filed by certain third

parties ("Petitioners") who challenged the forfeiture of certain of the property. [Docs. 148-51].[1]

Defendant's wife, Evelyn Sue Edwards, filed a petition challenging the forfeiture of five properties. [Doc. 148]. Three companies – Apple Valley Development, Maple Leaf Holdings, and Merritt Island – also filed petitions challenging the forfeiture. [Docs. 149-51]. However, all three of these petitions were verified under penalty of perjury by Evelyn Sue Edwards; these companies are owned at least in part by Petitioner Evelyn Sue Edwards; and Evelyn Sue Edwards filed a response to the government's motion for summary judgment on behalf of herself and the aforementioned three companies. Therefore, the undersigned will refer to all petitioners collectively as "Petitioners," except where they are individually identified. Two banks and a mortgage corporation also filed

---

[1]     On March 7, 2011, Defendant Charles E. Edwards filed a motion docketed as a supplemental response in opposition to the government's motion for summary judgment. [Doc. 219]. On March 14, 2011, he filed a second supplemental response. [Doc. 223]. In these motions, Defendant moves the Court to dismiss the motion for summary judgment "for a Fraud on the Court by Former District Judge Camp . . . ." [Doc. 219 at 1, Doc. 223 at 1]. To the extent that Defendant seeks to respond to the motion for summary judgment, he does not have standing to do so because the motion for summary judgment involves petitions filed by his wife, not by him. Further, to the extent that he claims Judge Camp's decision-making should be questioned, Judge Camp is not deciding this motion for summary judgment. Accordingly, any challenge to Judge Camp's decision-making, as set forth by Defendant in [Doc. 219] and [Doc. 223], has nothing to do with this motion for summary judgment and will not be considered by the undersigned in this Order.

2

petitions challenging the forfeitures; however, their claims are not at issue. [Resp.'s SMF 7].

## II.
## Facts

When evaluating the merits of a motion for summary judgment, the Court must view the evidence and factual inferences in a light most favorable to the non-moving party. <u>Frederick v. Sprint/United Mgt. Co.</u>, 246 F.3d 1305, 1309 (11th Cir. 2001); <u>Hairston v. Gainesville Sun Pub. Co.</u>, 9 F.3d 913, 920 (11th Cir. 1993). Applying the above legal standard, the Court derives the following facts from the parties' statements of facts and from the record as a whole:[2]

**A.   Defendant's Pay Phone Business ("ETS")**

Defendant Charles E. Edwards was the controlling shareholder of ETS Payphones, Inc. [Doc. 1 at 1]. The United States government alleged that, from 1994 through 2000, Defendant committed fraud in the nature of a Ponzi scheme, money laundering, and various other crimes arising from and related to the operation of ETS, including violations of 18 U.S.C. §§ 1956 and 1957. [<u>See generally</u> <u>id.</u>]. After Defendant was convicted on all eighty-three counts with which he was charged, including convictions for money laundering and conspiracy

---

[2]   Unless otherwise noted, this overview is taken from those facts in parties' statements of material facts ("SMF") that have not been disputed.

3

to commit money laundering, <u>see</u> [Doc. 110], Judge Jack T. Camp issued a preliminary order of forfeiture of "all property involved in or traceable to [Defendant's] offenses," pursuant to 18 U.S.C. § 982(a)(1) and (b), and 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b). [Doc. 127]. Judge Camp's preliminary forfeiture order identified nine specific properties. [Id.].

Petitioners filed petitions under 21 U.S.C. § 853(n)(2) opposing the forfeiture of five of the nine properties: Sweet Bottom Drive, Duluth, Gwinnett County, Georgia ("Sweet Bottom Drive"); Upper Ledges Drive, Kingsport, Sullivan County, Tennessee ("Upper Ledges Drive"); proceeds from the sale of Burgundy Drive, Braselton, Barrow County, Georgia ("Burgundy Drive"); proceeds from the sale of Ramblers Inn Road, Jefferson, Jackson County, Georgia ("Ramblers Inn Road"); and proceeds from the sale of Crestview Drive, Jefferson, Jackson County, Georgia ("Crestview Drive"). [Docs. 148-51].

**B.   Property Purchases**

   **1.   Petitioner Evelyn Sue Edwards's Business Ventures**

On July 2, 2001, Petitioner Evelyn Sue Edwards and an acquaintance, Billy Hightower, incorporated Maple Leaf Holdings to build new homes. [Resp.'s SMF ¶ 45]. On January 28, 2002, she and Hightower incorporated Apple Valley Development to purchase properties. [Id. ¶ 46]. Towards the end of 2001, Defendant and

4

Hightower "decided to purchase some building lots that were for sale in Jackson County, Georgia." [Id. ¶ 47].

### 2.  The Properties

The Court will review the undisputed facts surrounding each of the contested five properties:

#### a.  Sweet Bottom Drive

On October 15, 1997, Defendant and Petitioner Evelyn Sue Edwards purchased property on Sweet Bottom Drive for $650,000. [Resp.'s SMF ¶ 27]. Defendant paid $10,000 in earnest money and $123,420.50 as a down payment for the property using funds derived from the sale of payphones. [Id. ¶ 35]. The remainder of the $650,000 purchase price was financed by the seller. [Id. ¶ 36]. The property was titled in Petitioner Evelyn Sue Edwards's name only because Defendant "wanted to protect [Petitioner Evelyn Sue Edwards's] interest." [Id. ¶¶ 28-29].

#### b.  Upper Ledges Drive

In November of 1998, Defendant used money derived from the sale of ETS payphones to purchase property on Upper Ledges Drive. [Resp.'s SMF ¶ 8]. The funds came from an account owned by a company named Twinleaf. [Id. ¶ 8-9]. Twinleaf was owned by Defendant and received "consulting fees" from ETS. [Id. ¶ 9].

Defendant directed that Upper Ledges Drive be titled in the name of Merritt Island, another of Defendant's companies. [Id. ¶ 9].

5

On January 29, 1999, Merritt Island quit-claimed its entire interest in the property to Defendant and Petitioner Evelyn Sue Edwards, without receiving consideration for the transfer. [Id. ¶ 10].

### c.   Proceeds from the Sale of Burgundy Drive

On January 22, 2002, Petitioner Evelyn Sue Edwards purchased the Burgundy Drive property for $550,000. [Doc. 189, Ex. 10]. Two thousand dollars in earnest money was used, and the loan received at closing was $656,887.00. [Id.]. The property was titled in Petitioner Evelyn Sue Edwards's name. [Pet.'s Dep. at 176:16-17].

### d.   Proceeds from the Sale of Ramblers Inn Road

After Petitioner Evelyn Sue Edwards and Hightower formed Apple Valley Development, the company purchased the property on Ramblers Inn Road. [Pet.'s Dep. at 27:16-25]. This property was later sold by the government after forfeiture. [Id. at 27:18-20]. Petitioner contends that she is entitled to half of the $33,596.96 in proceeds derived from the sale of the property on account of her being a 50/50 partner in Apple Valley Development with Hightower. [Id. at 28:1-14].

### e.   Proceeds from the Sale of Crestview Drive

Petitioner Evelyn Sue Edwards and Hightower's other company, Maple Leaf Holdings, purchased property on Crestview Drive, which was later sold by the government after forfeiture. [Pet.'s Dep. at 24:17-25:25]. Petitioner contends that she is entitled to half of

6

the $15,953.74 in proceeds derived from the sale of the property on account of her being a 50/50 partner in Maple Leaf Holdings with Hightower. [Id. at 25:11-25].

### 3. Funds Used to Purchase Properties

An IRS Special Agent testified at Defendant's trial that all of the properties at issue were purchased with proceeds from the sale of payphones, obtained, in other words, as a part of Defendant's fraudulent scheme. During her deposition, Petitioner Evelyn Sue Edwards could not point to any documents or evidence that would tend to disprove this assertion. [Resp.'s SMF ¶ 40].

Specifically, the following dialogue occurred during Petitioner Evelyn Sue Edwards's deposition:

> Q:          [D]o you know of any documents of any kind, any description whatsoever, that show that your claim of ownership for any of these properties that we've just discussed is based on any money that you earned yourself rather than money that was paid by your husband from any of the corporations that he owned that were related to ETS Payphones?
>
>             . . .
>
> Petitioner: Well, I think it was a combination. Obviously, he made more money than I did. We were married and had a joint checking account. So, obviously, probably like you and your wife and other husbands and wives, go purchase things together. And whatever's in your joint checking account is yours and hers.

> Q:          But just to be clear, you have no way to
>             swear under oath to the Court that $1 of
>             money that you earned went to purchase
>             any of those properties, as opposed to
>             money that came from any source of income
>             that your husband had. You can't prove it
>             or disprove it.
>
> Petitioner:   That's correct, I can't, not here today.

[Pet.'s Dep. at 180:12-181:9].

## III.
## Discussion

This criminal forfeiture matter is governed by 21 U.S.C. § 853, which permits a person asserting an interest in a forfeited property to petition for a hearing to adjudicate the validity of that person's property interest. Subsection (n)(3) of § 853 provides the following:

> The petition shall be signed by the petitioner under
> penalty of perjury and shall set forth the nature and
> extent of the petitioner's right, title, or interest in
> the property, the time and circumstances of the
> petitioner's acquisition of the right, title, or interest
> in the property, any additional facts supporting the
> petitioner's claim, and the relief sought.

21 U.S.C. § 853(n)(3). Such a petition must be filed within thirty days of the publication of an order of criminal forfeiture or the third party's receiving notice of the impending forfeiture, whichever is earlier. Id. § (n)(2).

8

## A.  Timeliness

As an initial matter, this Court does not have to reach the merits of Petitioners' petitions because the petitions were untimely. A claimant's petition must assert an interest in the property showing how her interest meets the requirements of 21 U.S.C. § 853(n)(6)(A)-(B). <u>United States v. Soreide</u>, 461 F.3d 1351, 1355 (11th Cir. 2006) (holding a claimant's petition untimely when the petition did not "assert that [the claimant] held an interest . . . superior to (or to the exclusion of) her husband's interest" and instead only "recount[ed] the facts of [the claimant's] purchases of the properties . . ."); <u>see also</u> <u>United States v. Pegg</u>, No. 7:97-CR-30, 2000 WL 34612651 at *2 (M.D. Ga. Nov. 9, 2000) (dismissing a petition because it "offered little more than the assertion that [the petitioner] ha[d] an ownership interest in the property and that he acquired that interest from illegal and legal activities . . . [and] from monies given to him and investments made").[3] In this case, none of the petitions is sufficiently specific to meet the requirements of the statute.

---

[3]    In <u>Pegg</u>, the Court found that the petition was not specific enough even though petitioner asserted that his interest in the property "was acquired in part from funds generated from his activity," including "several profitable and legitimate business enterprises," "monies gifted to him by his father," and "investment earnings." <u>Pegg</u>, 2000 WL 34612651 at *2.

AO 72A
(Rev.8/82)

Evelyn Sue Edwards's petition claims that she has an interest in "all buildings, appurtenances, improvements, fixtures, attachments and easements" in 3888 Sweet Bottom Drive and 5107 Upper Ledges Drive, and "$5,458.40 as proceeds from the sale of 2054 Burgundy Drive." Verified Statement of Interest of Evelyn Sue Edwards, [Doc. 148 at 1]. She does not claim that her interest is superior to her husband's interest, only stating that she "acquired her interest [in] the above stated properties in good faith . . . through her marriage to [Defendant] and through independent personal acquisitions," and that her interest "was not procured with any illegal proceeds from any illegal activity." [Id. at 2]. Likewise, the petitions of Apple Valley Development, Maple Leaf Holdings, and Merritt Island state only that the property should not be subject to forfeiture because "[c]laimant acquired its interest . . . in good faith and said property was not procured with any illegal proceeds from any illegal activity." [Doc. 149 at 1-2; Doc. 150 at 1-2; Doc. 151 at 1-2].

Because none of the petitions is sufficiently specific to qualify as a sufficient notice of interest as required by § 853(n), the Court need not address the merits of Petitioners' petitions. See Soreide, 461 F.3d at 1355; see also United States v. Jimerson, 5 F.3d 1453, 1455 (11th Cir. 1993) ("Instead of entertaining appellant's petition . . . , the district court should have

10

AO 72A
(Rev.8/82)

dismissed appellant's petition" because the court "can discern no facts that would support such a finding" that the petitioner could prevail under either subsection of 853(n)).

**B.   The Petition on the Merits**

Even if the petitions were sufficiently specific to qualify as a notice of interest, summary judgment still should be granted to the government. Under 21 U.S.C. § 853(n)(6)(A) and (B), a third party only has rights in a property that was the subject of a criminal forfeiture when the party demonstrates by a preponderance of the evidence that she (A) "has a legal right, title, or interest in the property . . . vested in [her] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture"; or (B) "is a bona fide purchaser for value . . . and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture . . . ." 21 U.S.C. § 853(n)(6)(A)-(B); accord United States v. Caro, No. 08-20044CR, 2010 WL 680939 at *3 n.3 (S.D. Fla. Feb. 23, 2010). Petitioners cannot survive summary judgment under either § 853(n)(6)(A) or (B).

**1.   21 U.S.C. § 853(n)(6)(A)**

First, Petitioners cannot prevail under 21 U.S.C. § 853(n)(6)(A) because they cannot show that the title to any of the properties is vested in them rather than Defendant, or that their

11

title is superior to Defendant's title, because each of the
properties was acquired <u>after</u> the illegal activity with illegally
derived proceeds. <u>United States v. Watkins</u>, 320 F.3d 1279, 1282
(11th Cir. 2003); <u>United States v. Eldick</u>, 223 Fed. Appx. 837, 840
(11th Cir. 2007) ("In order to have a superior interest, . . . the
claimant must have had a legal right, title, or interest in the
forfeitable properties that <u>preceded</u> the commission of the crime
that gave rise to the forfeiture of that property.") (emphasis
added) (<u>citing</u> <u>United States v. Watkins</u>, 320 F.3d 1279, 1282 (11th
Cir. 2003)); <u>United States v. Rothstein</u>, No. 09-60331-CR, 2010 WL
2730749 at *4 (S.D. Fla. July 9, 2010) ("[O]ne cannot prevail in an
§ 853(n)(6)(A) proceeding unless the forfeited property existed
prior to the commission of the act that gave rise to the
forfeiture.").

In this case, Petitioner Evelyn Sue Edwards concedes that "all
of the properties at issue in this case were purchased with proceeds
from the sale of payphones," and was unable to point to the
existence of "any documents or any evidence of any type that would
tend to disprove that" during her deposition. [Resp. SMF ¶ 40]. <u>See</u>
<u>United States v. Foley</u>, 258 Fed. Appx. 246, 247 (11th Cir. 2007)
(holding that the petitioner "failed to carry its burden of proof"
because even though it "ma[de] the conclusory assertion that $80-
$90,000 per month of legitimate income was generated . . . , the

[petitioner] wholly failed to prove that such funds were in fact legitimate"); see also United States v. Gamory, No. 1:08-CR-153-1-TWT, 2010 WL 3880880 at *3 (N.D. Ga. Sept. 28, 2010) ("[Petitioner] claims that she earned some money through her own employment, but she offers no evidence establishing a connection between this money and [the money forfeited]."). Because it is undisputed that all of the properties were purchased with proceeds from the sale of ETS payphones, and that any interest obtained by Petitioners was after the illegal activity, Petitioners cannot meet the requirements of subsection (A). See Watkins, 320 F.3d at 1282.

## 2.   21 U.S.C. § 853(n)(6)(B)

Petitioners are also unable to prevail under subsection (B) because they were not bona fide purchasers for value. Under 21 U.S.C. § 853(n)(6)(B), a bona fide purchaser must have purchased a right, title, or interest in the property without reasonable cause to believe that the property was subject to forfeiture. 21 U.S.C. § 853(n)(6)(B); see also United States v. Jimerson, 5 F.3d 1453, 1455 (11th Cir. 1993). This statutory provision "exists only to protect subsequent purchasers of 'the defendant's interest' in an asset." United States v. Soreide, 461 F.3d 1351, 1356 (11th Cir. 2006) (citing Kennedy, 201 F.3d 1324, 1330 (11th Cir. 2000)) (holding that a claimant who "admit[ted] that each of the properties was purchased from a third party seller" and not from the defendant

13

"is not the type of bona fide purchaser that [the statute] protects"); accord United States v. Caro, No. 08-20044CR, 2010 WL 680939 at *6 (S.D. Fla. Feb. 23, 2010). Because Petitioners did not purchase any interest from Defendant, Petitioners are not protected by the bona fide purchaser subsection of the statute.[4]

### IV.
### Conclusion

For the aforementioned reasons, it is **RECOMMENDED** that Respondent's motion for summary judgment, [Doc. 189], be **GRANTED**. With no outstanding matters before the undersigned, the clerk is **DIRECTED** to terminate the District Court's referral of this case to the undersigned.


**SO REPORTED AND RECOMMENDED**, this 18th day of April, 2011.


_s/ E. Clayton Scofield_
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

---

[4]     Further, Petitioners' potential innocence or good faith is irrelevant here because the "innocent owner" provision is a component of 21 U.S.C. § 881, the civil forfeiture statute. See United States v. Jimerson, 5 F.3d 1453, 1455 n.4 (11th Cir. 1993); see also United States v. Guerra, 216 Fed. Appx. 906, 910 (11th Cir. 2007).

14